UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RACHEL J. M.,

                      **Plaintiff,**                                        20-CV-463(Sr)

v.

**COMMISSIONER OF SOCIAL SECURITY,**

                      **Defendant.**

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #20.

## BACKGROUND

Plaintiff applied for disability insurance benefits with the Social Security Administration ("SSA"), on September 8, 2016, alleging disability beginning June 6, 2015, at the age of 25, due to fibromyalgia. Dkt. #14, p.317.

On December 6, 2018, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Cherie M. Plante, at an administrative hearing before Administrative Law Judge ("ALJ"), Brian LeCours. Dkt. #14, pp.294-315. Plaintiff

testified that she had attended college classes until approximately 2010 and last worked in a customer service/sales position in 2015. Dkt. #14, pp.299-300. She lives with her girlfriend who does all the housework. Dkt. #14, pp.299 & 303. Plaintiff testified that she experiences a lot of pain in her joints from fibromyalgia which also causes her anxiety. Dkt. #14, p.301. She spends a lot of time lying down and has trouble sitting for more than 20 minutes before she needs to reposition herself. Dkt. #14, p.301. She cannot stand for a long period of time or walk very far. Dkt. #14, p.302. When she makes dinner, she has to sit down and take a break. Dkt. #14, p.302. She also has difficulty holding things in her hand for an extended period of time. Dkt. #14, p.301. Her knees regularly feel like they are going to give out. Dkt. #14, p.301. She experiences stabbing pain and her joints lock up. Dkt. #14, p.303. She spends the majority of her day alternating between sitting on her couch with a donut cushion or lying on her bed with some blankets under her feet. Dkt. #14, pp.303-304. It takes her a long time to fall asleep. Dkt. #14, p.304. She doesn't sleep for more than four hours at a time and wakes feeling very stiff, with cracking joints. Dkt. #14, p.304. Plaintiff sees her primary care physician as needed, but explained that it was hard to travel to her office. Dkt. #14, p.307.

The VE classified plaintiff's past work as a customer complaint clerk, a skilled position performed at the sedentary exertional level. Dkt. #14, p.309.  When asked to assume an individual with plaintiff's age, education and past work experience who could work at the light level of exertion and was able to alternate sitting and standing at will, with the ability maintain either position for one-half hour, the VE

testified that plaintiff could perform her past work. Dkt. #14, pp.309-310. The VE testified that plaintiff could also work as a cashier, ticket taker or parimutuel ticket cashier, each of which were unskilled, light exertion positions. Dkt. #14, pp.311. Plaintiff would not be able to sustain employment if she was off task more than fifteen percent of the workday or absent more than one day per month. Dkt. #14, pp.311-312.

The ALJ rendered a decision that plaintiff was not disabled on January 2, 2019. Dkt. #13, pp.15-25. The Appeals Council denied review on February 18, 2020. Dkt. #13, p.4. The Appeals Council acknowledged that plaintiff had submitted 1,124 pages of medical records from Strong Memorial Hospital dated March 28, 1990 to January 10, 2019 as additional evidence, as well as a medical source statement from Dr. Nelson dated October 23, 2018, but did not exhibit the documents because it did not show a reasonable probability that it would change the outcome of the decision. Dkt. #13, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on April 20, 2020. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one

rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to

the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 6, 2015; (2) plaintiff's fibromyalgia constitutes a severe impairment; (3) plaintiff's impairment did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform a full range of light work; (5) plaintiff was capable of performing her past work as a customer complaint clerk and was also capable of working as a cashier, ticket taker and pari-mutuel ticket cashier and was not, therefore, disabled within the meaning of the SSA. Dkt. #13, pp.18-25.

Plaintiff argues that the ALJ failed to properly evaluate her fibromyalgia in accordance with SSR12-2p and improperly relied upon the lack of objective clinical findings as undermining plaintiff's subjective complaints of pain. Dkt. #18-1, pp.14-18. Specifically, plaintiff argues that it was improper for the ALJ to diminish the opinion of plaintiff's treating physician based upon the ALJ's opinion that plaintiff did not receive the type of treatment that would be expected for someone experiencing disabling symptoms. Dkt. #18-1, p.21. Plaintiff argues that the medical source opinions from both her treating physician and the consultative examiner warrant more restrictive limitations than the ALJ assessed and that an appropriate assessment of her fibromyalgia symptoms, as documented by her treating physician, warrants a finding of disability.

Dkt. #18-1, pp.19-22. Plaintiff also challenges the decision by the Appeals Council not to consider new and material evidence that related to the period before the date of the ALJ's decision and was both relevant and probative of plaintiff's RFC. Dkt. #18-1, pp.22-27. More specifically, plaintiff argues that it was error to refuse to consider additional treatment notes when the ALJ discounted her treating physician's medical source statement because of the lack of evidence of treatment. Dkt. #18-1, p.24. Finally, plaintiff challenges the ALJ's evaluation of her subjective complaints and assessment of her credibility. Dkt. #18-1, pp.27-30.

The Commissioner responds that it was proper for the ALJ to afford greater weight to the opinion of the consultative examiner as to plaintiff's functional limitation because the treating physician's assessment of functional limitations was not supported by her treatment records. Dkt. #21-1, pp.6-11. The Commissioner also argues that plaintiff failed to demonstrate good cause for failing to submit additional treatment records to the ALJ for consideration and argues that much of this evidence was either irrelevant or duplicative of evidence considered by the ALJ. Dkt. #21-1, pp.11-13. Finally the Commissioner argues that the ALJ properly evaluated the consistency of plaintiff's subjective complaints. Dkt. #21-1, pp.13-17.

Plaintiff replies that both medical source opinions support more restrictive limitations than the ALJ imposed and emphasizes that fibromyalgia is a diagnosis based upon a lack of objective findings. Dkt. #22, pp.2-3. Plaintiff explains that counsel requested and submitted to the Appeals Council additional medical records from the

-6-

time period considered by the ALJ after they were substituted as counsel following the ALJ's unfavorable decision. Dkt. #22, p.6.

Social Security Ruling ("SSR"), 12-2p explains that fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least three months." *Anysha M. v. Comm'r of Soc. Sec'y,*, 19-CV-271, 2020 WL 1955326, at * 3 (N.D.N.Y. April 23, 2020), *quoting* SSR 12-2p, 2012 WL 3104869, at *2 (July 23, 2012). Because there are no objective tests that can conclusively confirm a diagnosis of fibromyalgia, an ALJ is not permitted to rely solely on objective evidence – or the absence of objective evidence – when determining a plaintiff's RFC. *Ian S. v. Comm'r of Soc. Sec'y*, 20-CV-6022, 2021 WL 3292203, at *3-4 (W.D.N.Y. Aug. 2, 2021), *quoting Anysha M.,* 2020 WL 1955326, at * 3; *See Green-Younger v. Barnhart*, 335 F.3d 99, 108-109 (2d Cir. 2003) (recognizing that physical examinations will usually yield normal results - a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions). Instead, the ALJ must consider all relevant evidence, including the plaintiff's daily activities; medications or other treatments used to alleviate symptoms; nature and frequency of the plaintiff's attempts to obtain treatment for symptoms; and statements by others about the plaintiff's symptoms. *Christine S. v. Comm'r of Soc. Sec'y*, 2020 WL 3642244, at *4 (N.D.N.Y. July 6, 2020); SSR 12-2p, 2020 WL 1955326, at *5.

On November 14, 2016, plaintiff attended a consultative examination by Harbinder Toor, M.D. Dkt. #14, p.499. Plaintiff reported cooking as needed, cleaning

and laundry once a week and shopping once a month. Dkt. #14, p.499. Dr. Toor observed that plaintiff was in mild to moderate pain with a normal gait and no difficulty walking on heels and toes. Dkt. #14, p.500. She was able to squat 50% and had no difficulty getting on and off the exam table or rising from a chair. Dkt. #14, p.500. Upon examination, Dr. Toor observed trigger points for fibromyalgia including the gluteal region, trochanteric region and bilateral knees. Dkt. #14, p.501. Her joints were stable and nontender and her range of motion was full except for flexion and extension of the lumbar spine and lateral felxion and rotary movement of the lumbar spine bilaterally. Dkt. #14, pp.500-501. Dr. Toor opined that plaintiff had moderate limitation in standing, walking, sitting and bending and that fibromyalgia pain interfered with her physical routine. Dkt. #14, p.501.

On May 19, 2017, plaintiff's primary care physician, Sasha Nelson, M.D., completed a Fibromyalgia Residual Functional Capacity Questionnaire. Dkt. #14, pp.552-556. Dr. Nelson reported that she had been plaintiff's primary care physician for four years and that plaintiff satisfied the American College of Rheumatology criteria for fibromyalgia based upon a negative workup for autoimmune disease or rheumatoid arthritis and the presence of 12/18 tender points. Dkt. #14, p.552. She reported symptoms of multiple tender points; nonrestorative sleep; chronic fatigue; morning stiffness; muscle weakness (lifting hurts, legs give out); frequent, severe headaches; premenstrual syndrome ("PMS"); temporomandibular joint dysfunction ("TMJ"); numbness and tingling in fingers and toes; dysmenorrhea; anxiety; panic attacks; and depression. Dkt. #14, p.552. Dr. Nelson noted right hip popping; stiff spine; and all over

intermittent pain. Dkt. #14, p.553. She opined that plaintiff's pain would frequently interfere with her ability to sustain attention and concentration to perform even simple work tasks and that she was incapable of tolerating even "low stress" jobs. Dkt. #14, p.553. She further opined that plaintiff could walk less than one block and could sit and stand/walk about two hours in an eight-hour day, but could sit no more than fifteen minutes at a time or stand for more than 30 minutes at a time. Dkt. #14, p.554. She estimated that plaintiff would need a 15 minute break every few hours and would be absent an average of more than four days per month. Dkt. #14, pp. 554-555.

On October 23, 2018, Dr. Nelson completed a second Fibromyalgia Residual Functional Capacity Questionnaire.[1] Dkt. #14, pp.546-550. Although generally consistent with the initial document, Dr. Nelson reported that plaintiff needed to shift position constantly and could sit no more than five minutes or stand no more than ten minutes at a time. Dkt. #14, p.548. For prolonged sitting, Dr. Nelson indicated that plaintiff should elevate her feet. Dkt. #14, p.548. She estimated that plaintiff would need a 30 minute break every hour and would be absent an average of more than four days per month. Dkt. #14, pp.548-549.

The ALJ gave Dr. Toor's opinion regarding plaintiff's functional limitations some weight. Dkt. #13, p.23. However, the ALJ gave little weight to Dr. Toor's opinion regarding plaintiff's limitation due to pain because it appeared that Dr. Toor relied upon

---

[1] Contrary to plaintiff's argument, this document is contained within the record before the ALJ at Exhibit 4F and referenced by the ALJ in his decision. Dkt. #13, p.23.

plaintiff's subjective complaints, which the ALJ found not well supported by the limited treatment history. Dkt. #13, p.23. The ALJ afforded Dr. Nelson's responses to the fibromyalgia questionnaires little weight because they were not supported by her treatment records. Dkt. #13, p.23. The ALJ noted that the findings during the consultative examination do not support the degree of limitation reported by Dr. Nelson. Dkt. #13, p.23. The ALJ also noted that although there was some evidence of treatment for plaintiff's symptoms, plaintiff had not received the type of treatment one would expect for disabling symptoms. Dkt. #13, p.23. The ALJ similarly dismissed plaintiff's testimony regarding the intensity of her pain and limited activities of daily living as not entirely consistent with the medical evidence and other evidence in the record, explaining that plaintiff had not received the type of treatment one would expect for disabling symptoms. Dkt. #13, pp.23.

In fact, the medical evidence before the ALJ contained less than 100 pages. Dkt. #14, pp.482-576. The Court notes that while the additional evidence submitted by subsequent counsel is largely extraneous – for example, it contains medical records of plaintiff's birth – it also contains omitted medical records from Dr. Nelson, beginning with plaintiff's initial visit on January 22, 2013. Dkt. #13, pp.145-876. These records reveal telephone and email communications regarding plaintiff's persistent symptoms and attempts medication management that provide context relevant to the ALJ's concerns about apparent lack of treatment. *See, e.g.*, Dkt. #13, pp.612, 700-701, 812-813, 821-825 & 834 & Dkt. #14, pp.65 & 134.. With a diagnosis of fibromyalgia, "longitudinal records reflecting ongoing medical evaluation and

treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of the impairment." *Anysha M.*, 2020 WL 1955326, at *5, citing SSR 12-2p, 2012 WL 3104869, at *3. A more complete picture of Dr. Nelson's relationship with plaintiff may also impact the ALJ's assessment of the appropriate weight to afford Dr. Nelson's opinions regarding plaintiff's functional capacity. *See, e.g., Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) ("The opinion of a treating physician on the nature or severity of a claimant's impairments is binding if it is supported by medical evidence and not contradicted by substantial evidence in the record.").

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #18), is granted in so far as plaintiff seeks remand and the Commissioner's motion for judgment on the pleadings (Dkt. #21), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:    Buffalo, New York**
**September 30, 2021**

                                                    s/ H. Kenneth Schroeder, Jr.
                                                  **H. KENNETH SCHROEDER, JR.**
                                                  **United States Magistrate Judge**